UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| K.H.; and S.H.,<br><br>Plaintiffs,<br><br>v.<br><br>BLUECROSS BLUESHIELD OF ILLINOIS,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br>REMANDING PLAINTIFFS' CLAIM<br>FOR BENEFITS<br><br>Case No. 2:21-cv-403-HCN-DAO<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiffs K.H. and S.H. sued Blue Cross and Blue Shield of Illinois, asserting a claim for payment of improperly denied benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*.[1] Both sides move for summary judgment. The court denies Blue Cross's motion and grants the Plaintiffs' motion in part, remanding their claim to Blue Cross for reconsideration.

I.

Blue Cross serves as the claims administrator for the BlueAdvantage Entrepreneur Participating Provider Option Plan. *See* Dkt. No. 2 at 1 ¶ 2; Dkt. No. 30 at 2 ¶ 2; AR 2305.[2] K.H. was a participant in the Plan, and his child S.H. was a beneficiary. *See* Dkt. No. 2 at 1–2 ¶¶ 1 & 3; Dkt. No. 30 at 2 ¶¶ 1 & 3.

Following reported episodes of self-harm and a suicide threat, *see* AR 726, S.H. was enrolled from May 2018 through May 2019 at two facilities in Utah: Outback Therapeutic Expeditions and Monuments Academy, *see* Dkt. No. 2 at 2 ¶ 4; Dkt. No. 30 at 2 ¶ 4. The

---

[1] In their complaint, the Plaintiffs also asserted a claim under the Mental Health Parity and Addiction Equity Act. The court previously dismissed that claim. *See* Dkt. Nos. 22–23.

[2] Citations to the administrative record are noted "AR XX." The administrative record is contained in Docket Number 44 and the attached documents.

Plaintiffs describe Outback as an "outdoor behavioral health provider," and Monuments as a "residential treatment center." Dkt. No. 39 at 2. When Blue Cross refused to provide benefits for S.H.'s treatment at Outback and Monuments, a complex appeals process ensued. *See* AR 1007–30.

Eventually, in January 2020, Blue Cross sent a letter providing the following explanation for its denials of benefits:

> While reviewing the medical records from both facilities, it was determined that neither facility meets our requirements for a Residential Treatment Center (RTC). Attached is page 25 of the members' policy book, which provides the definition of an RTC. Per the policy, licensure as an RTC and confirmation of 24-hour nursing presence and M.D. access is required for RTC. Neither facility has a 24-hour nursing presence and Medical Director (M.D.) access. The facilities appear to be an Academy, which is not a covered benefit.

AR 1021.[3] The page from the Plan's Certificate attached to the January denial letter defines a "Residential Treatment Center" as

> a facility setting offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and is licensed by the appropriate state and local authority to provide such services. It does not include half-way houses, supervised living, group homes, boarding houses or other facilities that provide primarily a supportive environment and address long term social needs, even if counseling is provided in such facilities. Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for patients with Mental Illness and/or Substance Abuse Disorders.

AR 1023.

The Plaintiffs made an internal appeal of this decision in March 2020. *See* AR 994–1000. In December, Blue Cross affirmed its denial in another letter, *see* AR 1995–2002, explaining:

---

[3] The January denial letter further explained that certain Plan provisions the Plaintiffs had invoked—included within the Plan's "Medical Services Advisory Program"—did not apply to the Plaintiffs' claims, and that the Plaintiffs had failed to obtain preauthorization for S.H.'s treatment. *See* AR 1021–22. Because neither party raised these issues in its summary-judgment motion, the court need not address them.

"Based on your appeal request, and further review of your benefit book and claim, it has been determined that additional benefits are not available for these services. This is a non-covered service." AR 1996. The December letter also provided the following quotation from the Plan: "Expenses for the following are not covered under your benefit program: Residential Treatment Centers, except for Inpatient Substance Abuse Rehabilitation Treatment and as specifically mentioned under this Certificate." AR 1996–97. The Plaintiffs then filed this lawsuit.

## II.

"When, as here, the parties in an ERISA case both move[ ] for summary judgment and stipulate[ ] that no trial is necessary, summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (cleaned up). The court reviews a denial of benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

The parties agree that, because the Plan is fully insured, state law mandates a *de novo* standard of review here. *See* Dkt. No. 39 at 9; Dkt. No. 43 at 2.[4] That standard requires the court to "determine whether the administrator made a correct decision." *Brian J. v. United Healthcare Ins. Co.*, 667 F. Supp. 3d 1124, 1130 (D. Utah 2023) (quoting *Niles v. American Airlines, Inc.*,

---

[4] The Plaintiffs also argue that *de novo* review is required because (they allege) Blue Cross violated ERISA's claim-procedure regulations and the Plan's procedural requirements in processing their claims. *See* Dkt. No. 39 at 10–12. The court need not decide whether these alleged procedural irregularities would independently require *de novo* review given that Blue Cross concedes that *de novo* review is appropriate in all events.

269 F. App'x 827, 832 (10th Cir. 2008) (unpublished)). "In reviewing [Blue Cross's] determination, the court is limited to the rationale given by [Blue Cross] for the denial of benefits." *Id.* at 1132 (citing *Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 828–29 (10th Cir. 2008) (applying *de novo* review)). "'Remand is appropriate if the administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision' but 'the evidence in the record' does not 'clearly show that the claimant is entitled to benefits.'" *Id*. (cleaned up) (quoting *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1229 (10th Cir. 2021) (applying *de novo* review)). Additionally, in extreme circumstances, a court can award benefits if a plan administrator engaged in "clear and repeated procedural errors" when denying a claim. *D.K. v. United Behav. Health*, 67 F.4th 1224, 1244 (10th Cir. 2023).

## III.

Based on the administrative record before it, the court can say neither that Blue Cross's denial of benefits was correct nor that the Plaintiffs are clearly entitled to benefits under the Plan. It thus concludes that a remand is warranted.

## A.

The rationale that Blue Cross asserted in its January denial letter was that neither Outback nor Monuments was a "Residential Treatment Center," as defined by the Plan, because neither facility provided 24-hour onsite nursing services and 24-hour access to a medical doctor. *See* AR 1021. The court cannot conclude, based on the Plan language and the portions of the administrative record invoked by the parties, that this asserted rationale justifies Blue Cross's denial of benefits.

The Plaintiffs do not seem to dispute, at least for purposes of these summary-judgment motions, that both facilities lacked 24-hour nursing presence and medical access, *see* Dkt. No. 45

at 17–19, and thus did not meet the Plan's definition of a "Residential Treatment Center." The Plaintiffs *do* dispute, however, whether the facilities' failure to meet this definition justifies the denial of their benefits claims. It does not matter, they argue, that S.H.'s treatment did not occur at a residential treatment center, because Blue Cross has not identified any Plan provision that *limits coverage* for such treatment to care provided by a residential treatment center.

The court agrees. Absent a *coverage* provision establishing that certain treatment will be covered only if (or at least, if) provided in a "residential treatment center," it does Blue Cross no good to point to the *definition* of a residential treatment center. Whether Outback or Monuments meets this definition is not relevant if the Plan does not limit coverage of the type of treatment S.H. received to care provided at a residential treatment center. But Blue Cross cites no such coverage provision.[5]

To be sure, in its December denial letter, Blue Cross did cite a provision from the Plan's "*Exclusions*" section relating to residential treatment centers. *See* AR 1996–97. But, as the Plaintiffs note, far from stating that inpatient mental-health care will be covered only if (or even, if) it is provided in a residential treatment center, that provision suggests *the opposite*.

---

[5] Blue Cross asserts in its supplemental brief that although the Plan covers treatment at "Inpatient Mental Health facilities," it "specifies" only two types of such facilities—residential treatment centers and inpatient hospitals—thus limiting coverage of inpatient mental-health care to treatment provided at hospitals or residential treatment centers. Dkt. No. 54 at 3 & 10 (citing AR 2401–03). It follows, Blue Cross argues, that because Outback and Monuments are obviously not hospitals, and because neither meets the Plan's definition of a residential treatment center, the inpatient care that S.H. received at these facilities is not a covered benefit. *See id.* While this argument sounds reasonable enough, it founders on one fact: the pages of the Plan that Blue Cross cites in support of its argument simply do not say what Blue Cross claims they do. To the contrary, neither the phrase "Inpatient Mental Health facilities" nor the phrase "Residential Treatment Centers" appears on either of the pages Blue Cross cites. *Compare id.* at 3 (citing AR 2401–02), *with* AR 2401–02. Further, these pages discuss the Plan's "Medical Services Advisory Program," which—as Blue Cross correctly asserted in the January 2020 denial letter—explicitly "do[es] not apply to the treatment of Mental Illness." AR 2397.

Specifically, that provision states that treatment provided in "Residential Treatment Centers" is "not covered under your program . . . except for Inpatient Substance Abuse Rehabilitation Treatment and as specifically mentioned under this Certificate." AR 2451–54. A natural and obvious reading of this provision is that, although inpatient *substance-abuse* treatment provided in a residential treatment center is covered (provided it is *also* specifically mentioned elsewhere in the Plan as a covered service), inpatient *mental-health* treatment provided in a residential treatment center is categorically excluded from coverage.

Further, the relevant *coverage* provision—that is, the provision that actually addresses what "Mental Illness and Substance Abuse Services" are covered under the Plan—seems to cut against BlueCross's position. That provision states:

> Benefits for all of the Covered Services described in this Certificate are available for the diagnosis and/or treatment of a Mental Illness and/or Substance Abuse disorders. Treatment of a Mental Illness or Substance Abuse disorder is eligible when rendered by a Behavioral Health Practitioner working within the scope of their license.

AR 2431.

Nowhere does this provision even mention the term "Residential Treatment Center." Nor does it provide that inpatient mental-health care will be covered if—let alone *only if*—provided at such a facility.[6] By contrast, the immediately subsequent provision describing coverage for "Substance Abuse Rehabilitation Treatment" specifically provides that "Inpatient benefits for *these* Covered Services will also be provided for Substance Abuse Rehabilitation Treatment in a Residential Treatment Center." AR 2431 (emphasis added).

---

[6] Nor does the term "Residential Treatment Center" appear in the Plan section titled "Blue Cross and Blue Shield Mental Health Unit," which describes the preauthorization, medical-necessity-determination, and appeals processes for mental-health and substance-abuse benefits claims. *See* AR 2403–08.

6

Regardless of whether these coverage provisions, taken together, can fairly be read to mean that the Plan does *not* cover mental-health services provided at a residential treatment center, they certainly suggest—at a minimum—that whether Outback and Monuments meet the Plan's definition of a "Residential Treatment Center" is immaterial to whether S.H.'s treatment is a covered benefit under the Plan. Certainly, Blue Cross has provided no basis in its briefing or at oral argument—let alone in its denial letters—for concluding otherwise.

B.

Although the court cannot say that Blue Cross's asserted rationale for denying benefits was correct, it also cannot say that the Plaintiffs are clearly entitled to benefits under the Plan. *See Carlile*, 988 F.3d at 1229; *Brian J.*, 667 F. Supp. 3d at 1132.

The Plaintiffs argue that the court should look to the Plan's general definition of "Provider" to determine whether they are entitled to benefits. *See* Dkt. No. 39 at 13–16; Dkt. No. 45 at 12–17. The Plan defines a "Provider" as "any health care facility . . . or person . . . or entity duly licensed to render Covered Services" to a participant. AR 2384. As is evident from this definition, however, the Plaintiffs must show not merely that Outback or Monuments otherwise meets the Plan's definition of a "Provider," but also that the treatment S.H. received falls within the scope of the Plan's coverage provisions.

The Plan generally defines a "Covered Service" as "a service or supply specified in this Certificate for which benefits will be provided." AR 2373. As discussed, the "Mental Illness and Substance Abuse Services" coverage provision specifies that benefits will be provided for "Covered Services described in this Certificate" that are used "for the diagnosis and/or treatment of a Mental Illness and/or Substance Abuse disorders," and "rendered by a Behavioral Health Practitioner working within the scope of their license." AR 2431. This provision thus requires

7

that the services be specified *elsewhere* in the Plan, and that they *also* meet certain additional requirements.

The court concludes that the Plaintiffs have not shown that the treatment S.H. received at either Outback or Monuments falls within the scope of these coverage provisions. To start, the Plaintiffs have not shown that this treatment was a "Covered Service[ ] described in this Certificate," AR 2431—that is, "a service or supply specified in this Certificate for which benefits will be provided," AR 2373. Whether the Plan does or does not limit coverage of certain mental-health treatment to care provided by a residential treatment center does not matter if the sort of treatment S.H. received is not a covered service *at all*. But the Plaintiffs have identified no coverage provision encompassing the treatment S.H. received.

Further, the Plaintiffs have not shown that this treatment was provided by a "Behavioral Health Practitioner." AR 2431. To be sure, the Plaintiffs assert that Outback and Monuments were "working within the scope of their licenses" and "provid[ing] diagnostic[s] and treatment for S.H.'s mental illness." Dkt. No. 47 at 14. But merely working within the scope of one's license is not enough. The Plan is clear that for mental-health treatment to be covered, it must be provided within the scope of a provider's license *and* the provider must be a "Behavioral Health Practitioner." AR 2431.

The court certainly cannot assume that any individual licensed to perform treatment at Outback or Monuments necessarily qualifies as a "Behavioral Health Practitioner" under the Plan. Rather, determining whether a provider is a "Behavioral Health Practitioner" within the meaning of the Plan requires parsing a chain of defined terms. First, a "Behavioral Health Practitioner" is "a Physician or Professional Provider who is duly licensed to render services for Mental Illness, Serious Mental Illness or Substance Abuse disorders." AR 2369. A "Professional

Provider," in turn, is "a Physician, Dentist, Podiatrist, Psychologist, Chiropractor, Optometrist, Clinical Social Worker or any Provider designated by Blue Cross and Blue Shield of Illinois or another Blue Cross and/or Blue Shield Plan." AR 2384. Finally, as relevant here, a "Physician" is "a physician duly licensed to practice medicine in all its branches," AR 2383; a "Clinical Social Worker" is "a duly licensed clinical social worker," AR 2372; and a "Psychologist," among other requirements, must be a "psychologist who specializes in the evaluation and treatment of Mental Illness," and who has certain graduate degrees and work experience, AR 2385.

Neither party engages with these definitions. But, from the record before it, the court cannot "clearly" determine that the staff who treated S.H. at either Outback or Monuments meet the Plan's definition of "Behavioral Health Practitioners." *Carlile*, 988 F.3d at 1229.

The Plaintiffs have not argued or presented evidence that any of the individuals who treated S.H. were licensed physicians, clinical social workers, or psychologists. To be sure, the Plaintiffs note that Tami Melville—an employee at Monuments—signed "Psychiatric Follow-Up Notes," AR 9–11, 171, 186, and they argue that "[a]bsent direct evidence to the contrary, because these notes are from a licensed provider, there is every reason to believe that Ms. Melville had the credentials necessary to sign the documents." Dkt. No. 45 at 14. But because it is the Plaintiffs' "burden to establish a covered loss," *LaAsmar*, 605 F.3d at 800, *they* bear the burden to "clearly show" that they are "entitled to benefits," *Brian J.*, 667 F. Supp. 3d at 1132 (cleaned up). This sort of speculation does not suffice to meet that burden.

The Plaintiffs also argue that because the Plan "defines a marriage and family therapist," this "indicat[es] that such professionals can provide covered services under the terms of the Plan." Dkt. No. 47 at 8. Yet, as already discussed, merely citing the *definitions* section of the

9

Plan does not without more show that a given service is *covered*. Further, although "Marriage and Family Therapist" may be a defined term under the Plan, AR 2379, it is not included in the specific enumerated list of "Professional Providers" who constitute "Behavioral Health Practitioners," *see* AR 2369, 2384.

*  *  *

In short, "the administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision but the evidence in the record does not clearly show that the claimant is entitled to benefits." *Brian J.*, 667 F. Supp. 3d at 1132 (cleaned up). Further, the record here does not reflect anything like the repeated, clear, and egregious procedural errors that justified the award of benefits in *D.K.* The court accordingly concludes that a remand is appropriate. *Cf. David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1316 n.17 (10th Cir. 2023) (holding that a remand rather than an order that the Plan pay benefits is "appropriate" where the record "contains both evidence supporting Plaintiffs' claims for benefits and evidence supporting the denial of benefits").[7]

For the foregoing reasons, Blue Cross's motion for summary judgment is **DENIED**. The Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**. The Plaintiffs' claim for benefits is **REMANDED** to Blue Cross for reconsideration.

**IT IS SO ORDERED**.

---

[7] The scope of the remand will, of course, be subject to the limits imposed by Tenth Circuit precedent. *See, e.g.*, *David P.*, 77 F.4th at 1315–16.

Dated this 23rd day of August, 2024.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge